Gabriel M. Haws, ISB #6999
Mo Haws, ISB #11309
HILTY BOWER HAWS & SEABLE PLLC
1303 12th Avenue Road
Nampa, Idaho 83686
Telephone: (208) 345-3333
Facsimile: (208) 345-4461
ghaws@HBHSlaw.com
mohaws@HBHSlaw.com

*Attorneys for Plaintiff*

---

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDREW E. COUSSENS,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>IDAHO HUMANE SOCIETY, INC., a non-profit Idaho corporation; KORI REX, an individual; ANDREA STOFFLE, an individual; CHANDLER KUMPULA, an individual; HEIDI FREUTEL, an individual; TIFFANY SHIELDS, an individual; CITY OF BOISE, a political subdivision; BOISE CITY ATTORNEY'S OFFICE, a political division of City of Boise; and John Does I-X,<br><br>　　　　Defendants. | Case No. 1:24-cv-00049<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, Andrew E. Coussens ("Plaintiff" or "Mr. Coussens"), by and through his counsel of record, and initiates this civil action by filing this Complaint and Demand for Jury Trial ("Complaint"), against the above-named Defendants as follows:

1

## I.    PARTIES AND JURISDICTION

1.    At all times relevant hereto, Mr. Coussens has resided in Ada County, State of Idaho.

2.    At all relevant times hereto, defendant Idaho Humane Society, Inc. ("IDHS" or "Society") is a non-profit private corporation duly registered with the State of Idaho, and its principal place of business is located in Ada County. Its registered agent at all relevant times is Dr. Jeff Rosenthal. Upon information and belief, the City of Boise at least partially funds, controls, and/or empowers the Idaho Humane Society and grants to it law enforcement authority to enforce Boise City Code Title 5. At all relevant times, the Society and its agents acted pursuant to its and the City of Boise's official, established policies, procedures, and practices, and under the color of Idaho law.

3.    Based on information and belief, at all relevant times hereto, defendant Kori Rex ("Officer Rex") was employed as an Idaho Humane Society Enforcement Officer and resided in Ada County, Idaho.

4.    Based on information and belief, at all relevant times hereto, defendant Andrea Stoffle ("Officer Stoffle") was employed as an Idaho Humane Society Enforcement Officer and resided in Ada County, Idaho.

5.    Based on information and belief, at all relevant times hereto, defendant Chandler Kumpla ("Officer Kumpla") was employed as an Idaho Humane Society Enforcement Officer and resided in Ada County, Idaho.

6.    Based on information and belief, at all relevant times hereto, defendant Heidi Freutel ("Officer Freutel") was employed as an Idaho Humane Society Enforcement Officer and resided in Ada County, Idaho.

7.      Defendant Officers Rex, Stoffle, Kumpla, and Freutel will be referred to herein collectively as "IDHS Officers."

8.      At all relevant times hereto, defendant City of Boise ("City" or "City of Boise") is a political subdivision of the State of Idaho and body municipal, organized and operating pursuant to the laws of the State of Idaho acting pursuant to its official, established policies, procedures, and practices, and under the color of Idaho law. Upon information and belief, it funds and controls the Boise City Attorney's Office. Upon information and belief, it at least partially funds, controls, and/or empowers the Idaho Humane Society and grants to it law enforcement authority to enforce Boise City Code Title 5.

9.      At all relevant times hereto, defendant Boise City Attorney's Office ("BCAO" or "City Attorney") is funded and controlled by the City of Boise acting pursuant to the City of Boise's official, established policies, procedures, and practices, and under the color of Idaho law.

10.     Defendants John Does I-X, IDHS Officers, and/or BCAO attorneys are duly authorized agents and/or employees of the Society, the City Attorney, and/or the City of Boise who have policy-making authority for the City of Boise regarding matters of enforcement related to Title 5 of the Boise City Code, who were delegated such authority by the City of Boise, and or who participated in the unlawful citation, charing, and/or prosecution of Mr. Coussens related to his service animal Dexter.

11.     Mr. Coussens does not know the true names or identities of the defendants named herein as John Does I through X and therefore prays for leave to amend this Complaint to substitute their names herein when their identities are ascertained.

12.     The named defendants are collectively referred to herein as "Defendants."

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1392(b) and 31 U.S.C. §§ 1391(b) and (c) because the acts alleged in this Complaint occurred in the District of Idaho.

14.     This Court has jurisdiction over this matter pursuant to 28 U.S.C §§ 1331, 1343(a)(3) & (4) and 42 U.S.C. §§ 1983 and 1988 as this case arises under the equal protection clause of the Fourteenth Amendment to the United States Constitution and under Idaho law. As Plaintiff's state law claims derive from the same nucleus of operative facts as his federal claims, this Court has pendent jurisdiction pursuant to 28 U.S.C. § 1367.

## NOTICE OF TORT CLAIM

15.     On January 17, 2023, Mr. Coussens filed and served a Notice of Tort Claim against the above-named Defendants pursuant to the Idaho Tort Claims Act Idaho Code §§ 6-901 *et seq*.

## II.     STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

### A. *Mr. Coussens And "Dexter"*

16.     Mr. Coussens re-alleges the preceding paragraphs as though set forth *in hac verba*.

17.     Mr. Coussens served in several paramilitary deployments as a contractor for the CIA and classified programs in several high-threat areas including, but not limited to Afghanistan and Africa over the course of eight (8) years.

18.     At all relevant times, Mr. Coussens has a Top Secret/Sensitive Compartmented Information Clearance (TS/SCI).

19.     Mr. Coussens was forced to medically retire from service following repeated exposure to combat and high mortality situations.

20.     On March 28, 2016, within just a few months of his wife's passing, Mr. Coussens was diagnosed with anxiety, depression, and Post Traumatic Stress Disorder ("PTSD") by Daniel Hardin, LCPC.

21.    On April 4, 2016, Dr. Stephen C. Martinez, M.D., diagnosed Mr. Coussens with PTSD and anxiety directly resulting from his overseas deployments.

22.    Mr. Coussens's PTSD-related symptoms or co-diagnosis include but are not limited to flashbacks, anxiety, depression, insomnia, and seizures.

23.    Pursuant to Title II of the Americans with Disability Act 42 U.S.C. § 12181 *et seq.* ("ADA"), Mr. Coussens is an individual with disabilities as defined because of his anxiety and PTSD diagnosis ("Disability").

24.    Mr. Coussens is substantially limited in performing one or more major life activities, including sleeping, eating, and at times thinking and concentrating, as a result of his Disability.

25.    At all relevant times, Mr. Coussens lived in the City of Boise, with his wife, until her untimely passing, and three children. His residence is located within Boise City limits.

26.    The Coussens family owned a whitish-gray German Shepherd named "Charlie" since 2009. In 2022, Charlie was 14 years old, subdued, quiet, and gentle.

27.    In 2019, Mr. Coussens reached out to Coastline K9 to adopt a trained service animal to assist him with his anxiety and PTSD because he had no one else to assist him.

28.    Coastline K9 owner, Erick Innis, recommended Mr. Coussens purchase "Dexter" a Dutch Shepherd. Mr. Innis personally trained and oversaw Dexter's 700 hours of training between March and October 2019 so that Dexter was qualified to perform the following services for Mr. Coussens: i) assist Mr. Coussens in the event of a seizure by interruption through nuzzling and ii) interrupt impulsive or destructive behavior resulting from PTSD by nuzzling and leaning into Mr. Coussens. Previously, Dexter had treatment as a multi-purpose working dog with disciplines in tracking, bomb detection, and bite training, including body language reading, targeted bites on

command, and impulse control, as well as in-depth obedience training, including strict obedience to voice commands. Additionally, Mr. Innis spent hours training Mr. Coussens personally and educating him on Dexter's training.

29.     Dexter's secondary bite training means that he is trained only to bite upon command by his handler and to maintain that bite until he is instructed to release the bite by his handler.

30.     Dexter is strictly trained and obedient to verbal commands.

31.     Dexter is a trained Service Animal within the definition of the ADA and 28 C.F.R. § 35.104 and Idaho Code § 56-701A(5).

32.     Dexter is with Mr. Coussens constantly.

33.     Dexter's impact on Mr. Coussens was truly lifesaving. Dexter has helped Mr. Coussens avoid and/or minimize debilitating seizures and episodes on numerous occasions. Mr. Coussens believes that Dexter saved his life on several occasions prior to February 11, 2022, by interrupting seizure episodes.

34.     Dexter is nearly all black and brindle in color with no white or gray.

35.     Dexter and Charlie are not the only Shepherd-type dogs in the neighborhood where Mr. Coussens lives.

B.  _Facts Related to False Criminal Charges Against Mr. Coussens and Dexter_

36.     Upon information and belief, the City has an agreement with Idaho Humane Society, Inc. to enforce animal welfare regulations in the City of Boise, pursuant to Boise City Code § 5-1-5. Each of the following HS officers was involved personally in this matter: HS Officer Rex, HS Officer Shields, HS Officer Kumpula, HS Officer Freutel, and HS Officer Stoffle.

37.     The Boise City Attorney's Office prosecutes infractions and criminal law violations brought by IDHS officers.

38.    On January 17, 2020, Mr. Coussens was cited with a dog at large violation by IDHS officers, a violation of Boise City Code 5-1-4(E). The infraction was for Charlie who had chased one of his children's balls across the street. Mr. Coussens admitted that infraction.

39.    On June 27, 2020, Mr. Coussens was cited with a dog at large violation by IDHS officers. The charge was dismissed following a court trial.

40.    From this point forward, IDHS officers began targeting Mr. Coussens and his dogs. IDHS officers knew that Mr. Coussens had both a light-colored dog and a dark-colored dog.

41.    Both the January and June 2020 citations were prosecuted by the Boise City Attorney's Office.

42.    On February 11, 2022, a complaining witness ("J.D.") and his father reported that J.D. had been bitten in the buttocks by a neighbor's dog and that Mr. Coussens was the dog owner and the neighbor. They informed IDHS Officer Rex that J.D. suffered a single slight scratch or abrasion from the "bite" and provided a picture of the scratch to Officer Rex.

43.    The "bite wound" was not a puncture wound or tear wound that is more consistent with a dog bite, particularly a dog with bite training like Dexter.

44.    J.D. and his father showed a video of the alleged offending dog to Officer Rex showing that the dog in question was a light white and gray German Shepherd.

45.    The neighbor complained the dog is frequently at large and not under the control of the owner.

46.    IDHS officers never obtained any clothing from J.D. to corroborate a "bite" wound by a dog.

47.    On February 12, 2022, Officer Rex and another IDHS Officer went to Mr. Coussens's house and left her card.

48. Without ever verifying that J.D.'s alleged bite was indeed a dog bite (*i.e.*, clothing and medical records), Officer Rex called Mr. Coussens on February 12, 2022, and insisted and demanded that Mr. Coussens release Dexter for a 20-day quarantine period.

49. Mr. Coussens objected stating that Dexter was always with him, never bit J.D. as claimed, and was his trained service animal under the ADA.

50. Officer Rex enlisted the assistance of Officer Shields, and both Officers continued to insist and demand that Mr. Coussens release Dexter for a 20-day quarantine period even though neither of them identified Dexter as the offending dog.

51. Officer Rex and Officer Shields sought the advice of a third-party self-proclaimed specialist in ADA laws, Cheryl Bloom, and reported that Mr. Coussens's service dog, Dexter, had bitten an individual even though Officers never actually identified Dexter as the offending dog.

52. Ms. Bloom erroneously informed IDHS Officers that "under Title II of the ADA if [Dexter] is considered to be a threat to the public or to the health of others, it can be removed."

53. She also erroneously told IDHS Officers that a trained protection dog cannot qualify as a service animal.

54. Emboldened with this information, Officers Stoffle, Kumpula, and Rex went to Mr. Coussens's home and spoke with Mr. Coussens. Their body camera footage shows that when they ring the doorbell, a dog barks in the window. Officers are heard to say that the barking dog is the offending dog. When Mr. Coussens opens the door, they ask the barking dog's name, to which Mr. Coussens replies "Charlie." In other words, IDHS identified Charlie as the "offending" dog.

55. Nevertheless, IDHS Officers continued to insist that Mr. Coussens relinquish his service animal, Dexter, for a 20-day quarantine period pursuant to Boise City Ordinance § 5-1-10(C). Again Mr. Coussens informed them that Dexter did not bite anyone and he needed Dexter's

services for his Disability. He specifically informed them that none of his dogs left his property on February 11, 2022.

56.    IDHS Officer then stated that Mr. Coussens could agree to quarantine Dexter in-home for 10 days, as compared to the earlier 20 days they demanded. Mr. Coussens objected again explaining that quarantining Dexter was quarantining *him* and that Dexter never bit anyone. IDHS Officers later changed their minds and continued to insist that Mr. Coussens quarantine Dexter for 20 days.

57.    IDHS Officers cited Mr. Coussens for Dexter being at large, in citation 1739954 (Ada County Case No. CR01-22-05350) even though they knew that the alleged offending dog was a white and gray German Shepherd, had a picture and video of the white and gray German Shepherd from J.D., and identified the offending dog as Charlie when they went to Mr. Coussens's house.

58.    After IDHS Officers left Mr. Coussens's house, he called and spoke with dispatch. He was put into contact with a POST-certified Boise City Police Officer ("BCPD") who told him that Boise City Police Department would not assist IDHS in this case despite IDHS Officers' requests because BCPD stated the law would not permit them to remove Mr. Coussens's service animal from his care.

59.    On February 13, 2022, Officers Rex and Kumpula went back to Mr. Coussens's house and insisted again that he relinquish Dexter for a 20-day quarantine.

60.    Mr. Coussens informed IDHS Officers again that it was medically necessary for Dexter to remain with him in order to cope with his Disability. Mr. Coussens provided documentation showing Dexter's service training in compliance with the ADA definition, even

though formal certified training is not required under the ADA for Dexter to be considered a service animal.

61.     IDHS Officer Rex and Kumpula, under the supervision of Officer Shields, ignored Mr. Coussens's documentation and cited Mr. Coussens for failure to license, a violation of Boise City Code § 5-1-6, citation number 1739955, and Ada County Case No. CR01-22-05725.

62.     They also insisted that Mr. Coussens sign an in-home quarantine agreement. Mr. Coussens again refused to sign the agreement as written.

63.     Despite the complaining neighbors' failure to identify Dexter as the culprit dog, video proof that the culprit dog was a white and gray German Shepherd, HS officers' identification of the alleged culprit dog as Charlie at Mr. Coussens's home, and Dexter's proven service animal training, HS Officers Rex and Kumpula cited Mr. Coussens with interference with officials for refusing to relinquish Dexter, a misdemeanor violation of Boise City code § 5-1-7 (interference of official), citation number 17339956, and Ada County Case No. CR01-22-05378.

64.     IDHS Officers cited Mr. Coussens with a misdemeanor criminal law violation despite never attending or completing the Idaho Police Officers Standard Training.

65.     As a result of these interactions with Mr. Coussens, IDHS cited Mr. Coussens for Dexter as follows ("Charges"):

| Citation | Case Number | Allegation |
|---|---|---|
| 1739954 | CR01-22-5350 (infraction) | Violation of Boise City Code §5-1-7 dog at large |
| 1739955 | CR01-22-5352 (infraction) | Violation of Boise City Code § 5-1-6 "Dog Licensing" |
| 1739956 | CR01-22-05378 (misdemeanor) | Violation of Boise City Code §5-1-17 "Interference with Officials"—That the Defendant, Andrew E. Coussens, on or about the 13th day of February, 2022, in the city of Boise, county of Ada, state of Idaho, willfully hindered, delayed, obstructed, or interfered |

| | | with an Authorized Officer in the attempt to discharge the officer's duties, to-wit: failing to sign paperwork placing the dog under quarantine, which is in violation of Boise City Code § 5-1-17. |
|---|---|---|

66.     The Boise City Attorney's Office ("BCAO") filed and brought these charges against Mr. Coussens.

67.     Mr. Coussens communicated with BCAO attorneys and i) explained Dexter did not bite anyone; ii) provided documentation of Dexter's training as a service animal; and iii) explained Mr. Coussens's Disability and need for Dexter as a service animal and why a quarantine was not reasonable.

68.     BCAO ignored and refused to consider the facts provided by Mr. Coussens and, upon information and belief, refused to investigate Mr. Coussens's assertions, research and seek more accurate information prior to seeking probable cause finding from a magistrate to charge Mr. Coussens with a misdemeanor, and/or continuing the prosecution against Mr. Coussens in regards to Dexter.

69.     Mr. Coussens was forced to hire criminal defense counsel.

70.     BCAO discovery delays and refusal to provide discovery in a timely fashion increased the cost of Mr. Coussens's criminal defense. Specifically, IDHS and BCAO refused to provide the video of the offending "gray and white German Shepherd" type dog that allegedly bit J.D. which was provided by J.D. to IDHS officers. Indeed, Mr. Coussens's counsel was forced to file motions to compel and a motion for sanctions before receiving this video, which directly refuted all of IDHS's claims regarding Dexter.

71.     Finally, after several months of prosecution, incurring thousands of dollars in criminal defense attorneys fees, and worrying about his clearance status, BCAO attorney Chris

Topmiller looked at the evidence anew, the discovery errors by BCAO, and the acts and conduct of IDHS Officers in the case against Mr. Coussens and Dexter. Mr. Topmiller agreed to engage in mediation of the criminal charges against Mr. Coussens with the Honorable Jessica Lorello.

72.    During the mediation on or about July 22, 2022, the misdemeanor charges of interference with a public official against Mr. Coussens for Dexter were dismissed by BCAO.

73.    BCAO was also forced to amend the complaint for dog at large and failure to license to delineate "Charlie," rather than "Dexter," on July 26, 2022. Thus, all charges related to Dexter were dismissed.

74.    IDHS and the named IDHS Officers' conduct was intentional, wanton, reckless, and/or negligent in investigating the claims against Mr. Coussens and Dexter and filing a misdemeanor criminal law violation and infraction charges against Mr. Coussens for Dexter.

75.    BCAO and its employees and agents were intentional, wanton, reckless, and/or negligent in filing, pursuing, and prosecuting IDHS Officers' citations against Mr. Coussens related to Dexter, his service animal.

C. *City of Boise Liability for Acts of IDHS and IDHS Officers*

76.    Upon information and belief, the City through its ordinances and/or written agreement allows IDHS and IDHS Officers to enforce Title 5 of the Boise City Code and cite individuals with criminal misdemeanor violations and criminal infractions, even though the IDHS Officers are not trained and certified through the Idaho Police Officer Standards Training.

77.    Upon information and belief, at all relevant times, IDHS was an agent of the City for the purposes of enforcing Title 5 of the Boise City Code.

78.    At all relevant times, IDHS acted within the course and scope authority granted to it by the City for purposes of enforcing Title 5 of the Boise City Code.

79.    At all relevant times, IDHS Officers Rex, Stoffle, Kumpula, Freutel, and Shields were employees and/or agents of IDHS and/or the City.

80.    At all relevant times, IDHS Officers Rex, Stoffle, Kumpula, Freutel, and Shields acted within the scope and authority granted to them by the City and/or IDHS.

81.    Upon information and belief, at all relevant times, IDHS and/or the City was responsible for the supervision and training of IDHS officers, employees, and agents in investigating, citing, charging, and prosecuting criminal law violations (*i.e.*, misdemeanors) and/or criminal infractions.

82.    Upon information and belief, at all relevant times, the City was responsible for the supervision and training of IDHS and its officers related to investigating, citing, charging, and prosecuting criminal law violations (*i.e.*, misdemeanors) and/or criminal infractions in connection with Title 5 of the Boise City Code.

83.    Upon information and belief, the City failed to adequately and properly train and/or supervise IDHS officers in the enforcement of alleged Title 5 violations of the Boise City code regarding service animals approved by the ADA (28 C.F.R. §35.104) the ADA, Idaho Code § 56-701A(5) and/or the enforcement of Title 5-1-17.

D.  *City of Boise Liability for Acts of Boise City Attorney's Office*

84.    At all relevant times, BCAO and its attorneys are employees and/or agents of the City.

85.    Upon information and belief, BCAO acted within the course and scope of its authority granted by the City in prosecuting citations and criminal law violations brought forward by IDHS and IDHS Officers.

86.     Upon information and belief, the City is responsible for the training and supervision of BCAO and its employees and agents in prosecuting criminal infractions and/or criminal violations routed and reported by IDHS and its employees and agents for violations of Boise City Code Title 5.

87.     Upon information and belief, the City failed to adequately and properly train or supervise BCAO and its employees and agents in the enforcement of alleged Title 5 violations of the Boise City code regarding service animals approved by the ADA (28 C.F.R. § 35.104) the ADA, Idaho Code § 56-701A(5) and/or the enforcement of Title 5-1-17.

88.     Upon information and belief, the City and/or BCAO failed to adequately train and/or supervise its attorneys in charging and prosecuting citizens of Boise for violations and infractions, including but not limited to those charges submitted by IDHS Officers in the enforcement of Title 5 violations of the Boise City code regarding service animals approved by the ADA (28 C.F.R. § 35.104) the ADA, Idaho Code § 56-701A(5) and/or the enforcement of Title 5-1-17.

89.     Pursuant to Idaho Code § 6-803(5) the named Defendants are individually, as well as jointly and severally, responsible for damages and injuries to Mr. Coussens suffered as a result of the intentional, wanton, reckless, and/or negligent conduct and actions of IDHS Officers and BCAO employees in the investigating, citing, and prosecution of Mr. Coussens regarding Dexter. Defendants acted in concert or acted as agents of each other to pursue a common plan or design, which resulted in Officers Rex, Stoffle, Kumpula, Freutel, Shields, and BCAO employees and agents' intentional, reckless, and/or negligent conduct as described herein.

90.     As a direct and proximate result of Defendants' conduct, Mr. Coussens suffered an increase in his PTSD episodes and symptoms in the form of insomnia, headaches, stress, anxiety, bouts of emotionality, anger, frustration, discouragement, and nausea.

91.     As a direct and proximate result of Defendants' conduct, Mr. Coussens was forced to hire and pay for criminal defense counsel to achieve the rightful dismissal of the criminal violations and infractions against him regarding Dexter.

## COUNT I
## (Violations of ADA)

92.     Mr. Coussens incorporates by reference the preceding paragraphs as if fully alleged herein.

93.     Title II of the ADA was effective July 26, 1990.

94.     Defendants City, IDHS, and BCAO are public entities as defined by the ADA (28 C.F.R 35.104).

95.     Mr. Coussens is an individual with disabilities as defined by the ADA (28 C.F.R. 35.108).

96.     Mr. Coussens is substantially limited in performing one or more major life activities, including but not limited to sleeping, eating, thinking, and concentrating.

97.     Dexter is a trained service animal under the ADA (28 C.F.R. 35.104) and Idaho Code (56-701A(5)).

98.     Title II of the ADA requires that public entities shall make reasonable modifications in policies, practices, or procedures to permit the use of a service animal by an individual with a disability.

99.    Title II of the ADA also requires that a public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.

100.    The requirements of Title II of the ADA apply to criminal arrests, criminal charges, and criminal prosecution brought forward by public entities.

101.    Defendants violated the ADA as to Dexter and Mr. Coussens because they had knowledge of Dexter's substantial training as a service animal and chose to ignore that training and/or refused to acknowledge the legitimacy of that training as well as the effects Dexter's training would have on the investigation and charges against Mr. Coussens.

102.    Defendants violated the ADA as to Dexter and Mr. Coussens because they were informed and knew that Mr. Coussens had a qualifying Disability under the ADA but refused to believe him, refused to acknowledge the verity of his Disability, and/or had been untrained, uneducated, and unsupervised regarding how to handle an individual with a qualifying Disability under the ADA.

103.    Defendants violated the ADA as to Dexter and Mr. Coussens when they inquired and asked Mr. Coussens the nature of his Disability, the required documentation for his Disability, and/or required documentation of Dexter's service animal training.

104.    Defendants violated the ADA as to Dexter and Mr. Coussens when Defendants and/or their agents demanded that Mr. Coussens quarantine and/or remove Dexter, his service animal, from his premise or person and/or never offered Mr. Coussens and Dexter a reasonable accommodation to their demand of quarantine.

105.    Defendants violated Mr. Coussens's rights under the ADA by conducting a reckless, retaliatory, wanton, and/or intentionally incomplete investigation based on known incorrect information prior to citing, charging, and prosecuting Mr. Coussens for Dexter.

106.    Even assuming that Dexter was the offending dog, which Defendants knew or should have known he was not, Defendants violated Mr. Coussens's rights under the ADA when they refused to offer any reasonable accommodation to Mr. Coussens in their demand that he quarantine Dexter, even assuming that Dexter was the offending dog, which he was not.

107.    Even assuming that Dexter was the offending dog, which Defendants knew or reasonably should have known he was not, Defendants violated Mr. Coussens's rights by issuing him a criminal infraction citation related to his service animal, Dexter, and charged him with a misdemeanor crime when Mr. Coussens requested reasonable accommodation, a thorough investigation, and refuted and objected to the investigation and prosecution for Dexter.

108.    Defendants IDHS and the City are liable, under the theory of respondeat superior, for the actions and conduct of their agents (i.e., the named IDHS Officers) in investigating, citing, charging, and continuing the prosecution of Mr. Coussens related to Dexter that violated the ADA because they were the agents of the City and were acting within the scope of authority granted to them by the City of Boise.

109.    Defendants BCAO and the City are liable, under the theory of respondeat superior, for the actions and conduct of their agents (*i.e.*, BCAO attorneys and staff) in charging and continuing the prosecution of Mr. Coussens related to Dexter that violated the ADA because they were the agents of the City and were acting within the scope of authority granted to them by the City.

110.    Additionally, Boise City Code and the policies adopted by the City of Boise, BCAO, and/or IDHS in the enforcement of Boise City Code Title 5 are discriminatory and violate the ADA on their face and in the application of Title 5 because Title 5 fails to require accommodations be offered to a person with a qualified disability, like Mr. Coussens, who relies on a service animal.

111.    As a result of Defendants' wrongful actions, Mr. Coussens suffered general and special damages, including but not limited to:

    a.   Attorney fees and costs incurred in successfully obtaining a dismissal of the criminal charges against him in regards to Dexter and establishing that no probable cause existed for the charges filed concerning Dexter;

    b.   Mental and emotional distress manifested by physical symptoms including, but not limited to anger, depression, headaches, insomnia, nausea, anxiety, and or stress; and/or

    c.   Pain, suffering, humiliation, damage to reputation, physical exacerbation of his Disability and symptoms related to his Disability, and other personal injuries.

112.    Further, pursuant to 42 U.S.C. § 12205, Mr. Coussens is entitled to attorney fees and costs.

113.    The amount of these damages is to be proven with specificity at trial in an amount in excess of $25,000.00.

114.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

## COUNT II
### (Fourteenth Amendment (Due Process) and 42 U.S.C. § 1983)

115.    Mr. Coussens incorporates by reference the preceding paragraphs as if fully alleged herein.

116. At all relevant times to this action, the named IDHS Officers, IDHS, and BCAO and its agents and employees were acting under the color of law and on behalf of the City.

117. The acts and/or omissions of these Defendants were wanton, malicious, and/or reckless and at least deliberately indifferent and occurred while these Defendants were acting under the color of law.

118. These Defendants' wrongful actions violated the constitutional rights of Mr. Coussens, to wit: the Fourteenth Amendment of the United States Constitution as made actionable pursuant to 42 U.S.C. § 1983; and include, but are not limited to:

   a. Reckless, wrongful, negligent, and/or retaliatory investigation, citation, charging, and prosecution of Mr. Coussens related to his service animal, Dexter;

   b. Reckless, wrongful, negligent, and/or retaliatory refusal to reasonably accommodate Mr. Coussens's Disability in the investigation, citation, charging, and prosecution of Mr. Coussens related to Dexter after learning about Mr. Coussens's Disability and Dexter's qualified training as a service animal; and

   c. Malicious prosecution of Ada County Case Nos. CR01- 22-05350; CR01-22-05352; and CR01-22-05378 against Mr. Coussens related to Dexter.

119. Specifically, upon information and belief, IDHS and each of the named IDHS Officers i) facilitated the charges against Mr. Coussens in relation to Dexter, ii) facilitated an erroneous probable cause finding against Mr. Coussens in relation to Dexter, iii) continued prosecution against Mr. Coussens in relation to Dexter after having reliable information that the investigation as against Dexter was unfounded, and/or iv) failing to gather information in a timely fashion, in their individual and official capacities.

120.    Specifically, upon information and belief, BCAO and its agents or employees i) facilitated the charges against Mr. Coussens in relation to Dexter, ii) facilitated an erroneous probable cause finding against Mr. Coussens in relation to Dexter, iii) continued prosecution against Mr. Coussens in relation to Dexter after having reliable information that the investigation as against Dexter was unfounded, and/or iv) failing to gather information in a timely fashion, in their individual and official capacities.

121.    Specifically, the City is responsible for the acts and/or omissions of the named IDHS Officers, IDHS, and BCAO and its agents and employees under the theory of respondeat superior because those named Defendants were the agents of the City and were acting within the scope of authority granted to them by the City.

122.    Specifically, Defendants violated Mr. Coussens's due process rights by citing him, charging him, and prosecuting him for infractions and/or misdemeanor violations without probable cause as required by Idaho Code § 19-603, by falsifying or submitting a knowingly deficient and inaccurate report or affidavit a violation of Idaho Code § 18-3201, and by wrongfully prosecuting Mr. Coussens as outlined in the next count.

123.    Mr. Coussens had a right to be free from a violation of his Fourteenth Amendment rights by Defendants acting under the color of law.

124.    The above-outlined acts by IDHS Officers and BCAO attorneys were wanton, willful, malicious, reckless, and/or in deliberate indifference of Mr. Coussens's rights secured by the Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983.

125.    The violations of Mr. Coussens's constitutional rights described above were proximately caused by Defendants and/or the City's adoption, implementation, and/or enforcement of an official policy not to properly train, control, and/or supervise their officers

appropriately, which permitted their officers to cite, charge, and prosecute suspects without reasonable suspicion or probable cause without a warrant, and/or by their ratification of the constitutional violations or delegation of authority to subordinates who caused the violations.

126.    Defendants BCAO and the City are liable, under the theory of respondeat superior, for the actions and conduct of their agents (*i.e.*, BCAO attorneys and staff) in charging and continuing the prosecution of Mr. Coussens related to Dexter that violated the ADA.

127.    As a result of Defendants' wrongful actions, Mr. Coussens suffered general and special damages, including but not limited to:

  a.  Attorney fees and costs incurred in successfully obtaining a dismissal of the criminal charges against him in regards to Dexter and establishing that no probable cause existed for the charges filed concerning Dexter;

  b.  Mental and emotional distress manifested by physical symptoms including, but not limited to anger, depression, headaches, insomnia, nausea, anxiety, and or stress; and/or

  c.  Pain, suffering, humiliation, damage to reputation, physical exacerbation of his Disability and symptoms related to his Disability, and other personal injuries.

128.    Further, pursuant to 42 U.S.C. § 1988, Mr. Coussens is entitled to attorney fees and costs.

129.    The amount of these damages is to be proven with specificity at trial in an amount in excess of $25,000.00.

130.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under under 42 U.S.C. §1983 and Idaho Code § 6-1604.

## COUNT III
### (Malicious Prosecution)

131.    Mr. Coussens incorporates by reference the preceding paragraphs as if fully alleged herein.

132.    The named Defendants brought forward the Charges against Mr. Coussens in relation to Dexter and prosecuted Mr. Coussens for those Charges.

133.    These Charges against Mr. Coussens in relation to Dexter, his service animal, were terminated in his favor on July 22, 2022, when they were dismissed and/or amended as to Dexter.

134.    The named IDHS Officers, representing IDHS, brought the Charges forward, and BCAO, through its employees and agents, prosecuted the Charges.

135.    The Charges lacked probable cause because the named IDHS Officers and BCAO not only knew that the complaining witnesses, J.D. and his father, had provided information and video identifying a dog other than Dexter as the offending dog, but IDHS Officers also identified the offending dog as "Charlie" and not Dexter on their body cameras.

136.    Specifically, the named IDHS Officers had information and knew that the complaining witness had identified "Charlie" as the alleged offending dog, but continued to investigate and attempt to quarantine Mr. Coussens's service animal, Dexter, anyway.

137.    The named IDHS Officers also acted in malice when citing Mr. Coussens for the infractions because of prior interactions with Mr. Coussens including the interaction from 2020, wherein the IDHS charges were also dismissed against Mr. Coussens.

138.    The IDHS Officers also acted in malice when citing Mr. Coussens for the misdemeanor violation of "Interference with officials" when they attempted to quarantine Mr. Coussens's service animal while knowing that Dexter was not the offending dog, Dexter was a qualified service animal, and that Mr. Coussens had a Disability.

139.    The actions of the named IDHS Officers and the actions of BCAO agents and employees were malicious because, upon information and belief, these defendants intentionally, recklessly, and/or wantonly failed to provide full disclosure to the magistrate regarding the identification of the offending dog as a gray and white German Shepherd (*i.e.*, Charlie) and not Dexter, who is black and brindle in color and a Belgian Shepherd.

140.    Specifically, the City is responsible for the acts and/or omissions of the named IDHS Officers, IDHS, and BCAO and its agents and employees under the theory of respondeat superior because those named Defendants were agents of the City and were acting within the scope of authority granted to them by the City when they intentionally, recklessly, and unlawfully cited, charged, and prosecuted Mr. Coussens for the Charges.

141.    As a result of Defendants' wrongful actions, Mr. Coussens suffered general and special damages, including but not limited to:

a.  Attorney fees and costs incurred in successfully obtaining a dismissal of the criminal charges against him in regard to Dexter and establishing that no probable cause existed for the charges filed concerning Dexter;

b.  Mental and emotional distress manifested by physical symptoms including, but not limited to anger, depression, headaches, insomnia, nausea, anxiety, and or stress; and/or

c.  Pain, suffering, humiliation, damage to reputation, physical exacerbation of his Disability and symptoms related to his Disability, and other personal injuries.

142.    The amount of these damages is to be proven with specificity at trial in an amount in excess of $10,000.00.

143.    Mr. Coussens has been compelled to employ the services of Hilty, Bower, Haws & Seable, PLLC, to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees under Idaho Code §§ 6-918A and 12-121, and any other applicable statute or rule.

144.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

### COUNT IV
### (Negligent Infliction of Emotional Distress)

145.    Mr. Coussens incorporates by reference the preceding paragraphs as if fully alleged herein.

146.    Defendants' actions, as alleged hereinabove, were negligent and fell below the applicable standards of conduct owed to Mr. Coussens by Defendants at the times and places alleged hereinabove.

147.    As a direct and proximate result of Defendants' reckless and/or negligent conduct, as alleged hereinabove, Mr. Coussens suffered severe mental suffering manifested by physical symptoms including, but not limited to anger, depression, insomnia, nausea, headache, anxiety, and stress.

148.    As a result, Mr. Coussens was forced to incur necessary expenses for medical, psychological, and counseling care and expenses, emotional distress, loss of enjoyment of life, and reasonable values attributable for the losses of the companionship, services, support, care, comfort, and society, future medical costs and expenses, lost wages, physical and mental stress, and will continue to incur such expenses for such care, together with present and future pain and suffering, physical stress, and impairment. The specified amount of these damages is to be proven at trial in an amount in excess of $10,000.00.

149.    Mr. Coussens has been compelled to employ the services of Hilty, Bower, Haws & Seable, PLLC, to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees under Idaho Code §§ 6-918A and 12-121, and any other applicable statute or rule.

150.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

## COUNT V
### (Intentional Infliction of Emotional Distress)

151.    Mr. Coussens incorporates by reference the preceding paragraphs as if fully alleged herein.

152.    Defendants' actions, as alleged hereinabove, were intentional and/or reckless and fell below the applicable standards of conduct owed to Mr. Coussens by Defendants at the times and places alleged hereinabove.

153.    Defendants' actions, as alleged hereinabove, were extreme and outrageous and constituted an extreme deviation from reasonable standards of conduct and fell below the applicable standards of care owed to Mr. Coussens by Defendants at the times and places alleged hereinabove.

154.    As a direct and proximate result of Defendants' actions, as alleged hereinabove, Mr. Coussens suffered severe mental suffering manifested by physical symptoms including, but not limited to, anger, depression, headaches, nausea, anxiety, and stress.

155.    As a result, Mr. Coussens was forced to incur necessary expenses for medical, psychological, and counseling care and expenses, emotional distress, loss of enjoyment of life together with present and future pain and suffering, physical stress, suffering, and impairment. The specified amount of these damages is to be proven at trial in excess of $10,000.00.

156.    Mr. Coussens has been compelled to employ the services of Hilty, Bower, Haws & Seable, PLLC, to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees under Idaho Code §§ 6-918A and 12-121, and any other applicable statute or rule

157.    Mr. Coussens further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

## COUNT VI
### (Respondeat Superior Liability)

158.    Mr. Coussens incorporates by reference the preceding paragraphs as if fully alleged herein.

159.    During the relevant time periods, Defendant IDHS Officers, the Society, and BCAO and its agents and employees were working as employees or agents of the City of Boise.

160.    Defendant IDHS Officers, the Society, and its agents and employees enforcing Title 5 of the Boise City Code, and BCAO and its agents and employees were acting within the course and scope of their agency at the time of the aforementioned events.

161.    As Defendants IDHS Officers, the Society, and BCAO were acting within the course and scope of their employment, the City of Boise is liable for the damages caused to Mr. Coussens by the Defendants' reckless and/or negligence under the theory of respondeat superior.

162.    As a direct and proximate result of Defendants' negligence and/or recklessness, as imputed to the City of Boise pursuant to the theory of respondeat superior, as set forth above and otherwise, Mr. Coussens sustained both economic and non-economic losses as outlined above. The amount of these damages is to be proven with specificity at trial in an amount in excess of $25,000.00.

163.    Defendant City of Boise's conduct, as alleged hereinabove, was willful, wanton, reckless, and constitutes a gross deviation from the reasonable standards of care.

164.    Plaintiff has been compelled to employ the services of Hilty, Bower, Haws & Seable, PLLC, to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees under Idaho Code §§ 6-918A and 12-121, and any other applicable statute or rule.

165.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

### COUNT VII
### (Negligent Supervision)

166.    Mr. Coussens incorporates by reference the preceding paragraphs as if fully alleged herein.

167.    Defendants the City, the Society, and BCAO owed a duty to adequately supervise employees and agents of the City of Boise, the Society, and BCAO in the enforcement and prosecution of charges under Title 5 of the Boise City Code and its interplay with disabled Americans who must have service animals because of their disability.

168.    Defendants the City, the Society, and BCAO knew or reasonably should have known that IDHS Officers were untrained and unfit to perform the duties for which they were employed as agents of the City, the Society, and BCAO in the enforcement and prosecution of charges under Title 5 of the Boise City Code and its interplay with disabled Americans who must have service animals because of their disability. Defendants the City, the Society, and BCAO knew or reasonably should have known that an undue risk to citizens, including disabled citizens, in particular Mr. Coussens, would exist because Defendants the City, the Society, and/or BCAO employed IDHS Officers to enforce and prosecute charges under the Title 5 of the Boise City Code without sufficient training, education, and experience to handle such charges, especially in Mr. Coussens's cases.

169.    Despite credible information that the charging and prosecution of Mr. Coussens for the Charges were unfounded and erroneous, Defendants IDHS and BCAO continued to retain their employees and agents in the charging and prosecution of Mr. Coussens without providing adequate supervision. Defendants the City the Society, and BCAO knew or should have known that IDHS Officers and BCAO employees and agents were not following federal statute, Idaho Code, and/or Boise City Code and related City policies and procedures and were acting in an unlawful manner.

170.    Moreover, prior to charging and prosecuting Mr. Coussens with the Charges, IDHS Officers, IDHS, and BCAO and its agents and employees received credible and reliable information that Mr. Coussens's service animal Dexter was not the offending dog.

171.    Also even assuming that Dexter was the offending dog, which he was not, prior to charging and prosecuting Mr. Coussens for the Charges, IDHS Officers, IDHS, and BCAO and its agents and employees received credible and reliable information that under federal and Idaho law, IDHS Officers and BCAO were not able to cite and prosecute Mr. Coussens when he refused to quarantine his service animal without providing a reasonable accommodation.

172.    IDHS, BCAO, and the City's negligent supervision of IDHS Officers and BCAO agents and employees directly and proximately caused injury to Mr. Coussens, including both economic and non-economic losses, as outlined above, including but not limited to mental suffering manifested by physical symptoms such as anger, frustration, depression, insomnia, headaches, nausea, anxiety, and stress. The amount of these damages is to be proven with specificity at trial in an amount in excess of $10,000.00.

173.    Plaintiff has been compelled to employ the services of Hilty, Bower, Haws & Seable, PLLC, to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees under Idaho Code §§ 6-918A and 12-121, and any other applicable statute or rule.

174.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

## COUNT VIII
### (Negligent Training)

175.    Mr. Coussens incorporates by reference the preceding paragraphs as if fully alleged herein.

176.    Each employer has a duty to adequately train its employees to perform the work and services for which they are employed in a safe, prudent, and reasonable manner that does not harm or injure others.

177.    Each employer has a duty to exercise reasonable care to ensure that its employees are properly trained to perform the work and services for which they are employed and in a manner to avoid foreseeable violation of the rights of others, as well as risk of harm to others.

178.    Upon information and belief, IDHS, BCAO, and/or the City breached this duty by failing to train or, in the alternative, inadequately training the named IDHS Officers and BCAO agents and employees in the proper methods and inquiries regarding the investigation, citation, charging, and prosecution of the Charges levied against Mr. Coussens as well the interplay of those Charges with his Disability and need for a service animal.

179.    IDHS, BCAO, and the City's negligent training of IDHS Officers and BCAO agents and employees directly and proximately caused injury to Mr. Coussens, including both economic and non-economic losses, as outlined above, including but not limited to mental suffering manifested by physical symptoms such as anger, frustration, depression, insomnia, headaches, nausea, anxiety, and stress. The amount of these damages is to be proven with specificity at trial in an amount in excess of $10,000.00.

180.    Plaintiff has been compelled to employ the services of Hilty, Bower, Haws & Seable, PLLC, to institute and prosecute this claim. Plaintiff is, therefore, entitled to reasonable attorney fees under Idaho Code §§ 6-918A and 12-121, and any other applicable statute or rule.

181.    Plaintiff further reserves this paragraph for the inclusion of a claim for punitive damages under Idaho Code § 6-1604.

## ATTORNEY'S FEES

Mr. Coussens is entitled to an award of attorney's fees and costs incurred in this action, pursuant to 42 U.S.C. §§ 1988 and 12205 and Idaho Code §§ 6-918A and 12-121, and any other applicable statute or rule.

## DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues properly triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Coussens requests judgment against Defendants as follows:

1.    Award Mr. Coussens appropriate equitable or declaratory relief necessary to make Mr. Coussens whole and compensate him for discriminatory acts under Title II of the Americans With Disabilities Act and 42 U.S.C. § 12205;

2.    Award Mr. Coussens a judicial declaration that Defendants' acts, omissions, and policies were in violation of Mr. Coussens's rights secured by the United States Constitution as alleged above;

3.    Award Mr. Coussens monetary damages to be proven at trial;

4.    Award Mr. Coussens pre-judgment and/or post-judgment interest as permitted by law;

5.      Award Mr. Coussens the costs of this action, including reasonable attorney's fees

and costs;

6.      Award Mr. Coussens punitive damages as alleged above in such amounts to be

proven at trial; and

7.      Award Mr. Coussens other and further legal and equitable relief as the Court deems

just and proper.

DATED this 8th day of February, 2024.

HILTY, BOWER, HAWS & SEABLE, PLLC


By:   _/s/ Gabriel M. Haws_____
        Gabriel M. Haws
        *Attorneys for Plaintiff, Andrew Coussens*

**VERIFICATION**

I, Andrew Coussens, declare and state as follows under penalty of perjury pursuant to the laws of the state of Idaho that the following is true and correct:

I am the Plaintiff in the above-entitled matter. I have read the foregoing Complaint and Demand for Jury Trial, know the contents thereof, and know the same to be true and correct.

DATED this 8th day of February, 2024.


_Andrew Coussens (Feb 8, 2024 15:59 MST)_

Andrew Coussens